# IN THE CIRCUIT COURT OF BOONE COUNTY, ARKANSAS

DEANNA TRUBLOOD, AS SPECIAL ADMINISTRATOR OF
THE ESTATE OF ZELMA WELLS, AND ON BEHALF OF THE
WRONGFUL DEATH BENEFICIARIES OF ZELMA WELLS

**PLAINTIFF**

VS.                          NO. CV-2010-1303

GGNSC HOLDINGS LLC d/b/a GOLDEN HORIZONS; GGNSC
CLINICAL SERVICES LLC d/b/a GOLDEN CLINICAL SERVICES;
GGNSC ADMINISTRATIVE SERVICES LLC d/b/a GOLDEN
VENTURES; GOLDEN GATE NATIONAL SENIOR CARE LLC
d/b/a GOLDEN LIVING; GGNSC EQUITY HOLDINGS LLC;
GOLDEN GATE ANCILLARY LLC d/b/a GOLDEN INNOVATIONS;
GGNSC HARRISON II LLC d/b/a GOLDEN LIVINGCENTER -
HARRISON; GPH HARRISON II LLC; NOREEN BAILEY, IN HER
CAPACITY AS ADMINISTRATOR OF GOLDEN LIVINGCENTER -
HARRISON; JOHN DOE I; JOHN DOE II; JOHN DOE III; JOHN
DOE IV; and JOHN DOE V

**DEFENDANTS**

FILED FOR RECORD
2010 APR 29 P 1:02 40
JEANNIE STEEN, CLERK
BY
DC

## COMPLAINT

## JURISDICTION AND VENUE

1.      The Circuit Court of Boone County, Arkansas, has jurisdiction of this case

because of the fact that Plaintiff is seeking damages against the Defendants in this

civil proceeding thereby giving this Court jurisdiction under Ark. Const. art. 7 § 11 and

Ark. Code Ann. § 16-13-201.

2.      The venue for this action is in Boone County, Arkansas, pursuant to the

provisions of Ark. Code Ann. § 16-60-112 and Ark. Code Ann. § 16-55-213 (Civil

Justice Reform Act of 2003).

## PARTIES

3.      Deanna Trublood is the Special Administrator of the Estate of Zelma Wells

pursuant to an Order entered by the Circuit Court of Boone County, Arkansas, Probate

Division on April 27, 2010 case No. PR-2009-108-2 and brings this action on behalf



EXHIBIT
A

of the Estate and the wrongful death beneficiaries of Zelma Wells. Deanna Trublood is the daughter of Zelma Wells.

4.  Zelma Wells was, at all times material hereto, a resident of Golden LivingCenter - Harrison, a skilled nursing facility located at 115 Ordendorrf Avenue, Harrison, Arkansas, from 2007 to on or about July 20, 2008, and suffered personal injuries and damages while a resident there.

5.  Defendant GGNSC Holdings LLC d/b/a Golden Horizons (Golden Horizons) is a foreign limited liability company, having its principal place of business in the State of Arkansas and domiciled in Arkansas.  At all times material to this action, Golden Horizons was engaged in the business of for-profit custodial care of elderly and infirm nursing home residents.  The agent for service for Golden Horizons is the Corporation Service Company, 300 South Spring Street, Suite 900, Little Rock, Arkansas 72201. Golden Horizons was and remains a proprietary corporation engaged in the for-profit custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and in need of nursing care and treatment at Golden LivingCenter - Harrison.

6.  Defendant GGNSC Clinical Services LLC d/b/a Golden Clinical Services (Golden Clinical) is a foreign limited liability company, having its principal place of business in the State of Arkansas and domiciled in Arkansas. At all times material to this action, Golden Clinical provided services to Golden Living Center - Harrison. The agent for service for Golden Clinical is the Corporation Service Company, 300 South Spring Street, Suite 900, Little Rock, Arkansas 72201. Golden Clinical was and remains a proprietary corporation engaged in the for-profit custodial care of elderly,

-2-

helpless individuals who are chronically infirm, mentally impaired, and in need of nursing care and treatment.

7.      Defendant GGNSC Administrative Services LLC d/b/a Golden Ventures (Golden Ventures) is a foreign limited liability company, having its principal place of business in the State of Arkansas and domiciled in Arkansas.  At all times material to this action, Golden Ventures provided services to Golden Living Center - Harrison. The agent for service for Golden Ventures is the Corporation Service Company, 300 South Spring Street, Suite 900, Little Rock, Arkansas 72201. Golden Ventures was and remains a proprietary corporation engaged in the for-profit custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and in need of nursing care and treatment.

8.      Defendant Golden Gate National Senior Care LLC d/b/a Golden Living is a foreign limited liability company, having its principal place of business in the State of Arkansas and domiciled in Arkansas.  At all times material to this action, Golden Living provided services to Golden LivingCenter - Harrison. The agent for service for Golden Living is the Corporation Service Company, 300 South Spring Street, Suite 900, Little Rock, Arkansas 72201.  Golden Living was and remains a proprietary corporation engaged in the for-profit custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and in need of nursing care and treatment.

9.      Defendant GGNSC Equity Holdings LLC is a foreign limited liability company, having its principal place of business in the State of Arkansas and domiciled in Arkansas. GGNSC Equity Holdings is the owner of Golden LivingCenter - Harrison. GGNSC Equity Holdings was and remains a proprietary corporation engaged in the

-3-

for-profit custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and in need of nursing care and treatment. The agent for service of process for GGNSC Equity Holdings is the Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

10.　　Defendant Golden Gate Ancillary LLC d/b/a Golden Innovations is a foreign limited liability company, having its principal place of business in the State of Arkansas and domiciled in Arkansas. At all times material to this action, Golden Innovations provided services to Golden LivingCenter - Harrison. The agent for service for Golden Innovations is the Corporation Service Company, 300 South Spring Street, Suite 900, Little Rock, Arkansas 72201. Golden Innovations was and remains a proprietary corporation engaged in the for-profit custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and in need of nursing care and treatment.

11.　　Defendant GGNSC Harrison II LLC d/b/a Golden LivingCenter - Harrison is a long term nursing facility licensed by the State of Arkansas and located at 115 Orendorff Avenue, Harrison, Arkansas. Defendant is engaged in the for-profit custodial care of elderly individuals who are chronically infirm, mentally impaired, and/or in the need of nursing care and treatment, and is authorized to do business in the State of Arkansas. The agent for service of process for Defendant is The agent for service for Golden LivingCenter - Harrison is the Corporation Service Company, 300 South Spring Street, Suite 900, Little Rock, Arkansas 72201. Defendant was the licensee of the facility during Betty Wells's residency.

12.    Defendant GPH Harrison LLC is a foreign limited liability company, having its principal place of business in the State of Arkansas and domiciled in Arkansas. The agent for service for GPH Harrison, LLC is the Corporation Service Company, 300 South Spring Street, Suite 900, Little Rock, Arkansas 72201. GPH Harrison LLC was and remains a proprietary corporation engaged in the for-profit custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and in need of nursing care and treatment.

13.    During her tenure as administrator of Golden Living Center - Harrison, Noreen Bailey was responsible for ensuring that the facility complied with state and federal regulations related to nursing facilities. 42 C.F.R. § 483.75 requires that nursing facilities be administered in a manner that enables them to use resources effectively and efficiently to attain or maintain the highest practicable, physical, mental and psychosocial well-being of each resident. The nursing facility, under the leadership of its administrator, is also required to operate and provide services in compliance with all applicable federal, state, and local laws, regulations and codes and with accepted professional standards and principles that apply to professionals providing services in such a facility. In fact, the administrator of the facility, appointed by the governing body, is responsible for the management of the facility according to 42 C.F.R. § 483.75(d)(2)(ii). As administrator of Golden Living Center - Harrison, Noreen Bailey breached her duties of care to Zelma Wells.

14.    Plaintiff is listing five John Does as potential defendants. David Hodges, one of the attorneys for the Plaintiffs, will file an Affidavit as to Unknown Tortfeasors at the time of the filing of this Complaint. Plaintiff reserves the right to file as to

-5-

additional parties, and serve those additional parties, who may be additional defendants, pursuant to Ark. Code Ann. § 16-56-125 and other statutes dealing with the John Doe procedure in this state. Plaintiff alleges that there may be additional defendants, described herein as John Does III through V, who had authority to affect, make, enforce, change, or otherwise implement policies, procedures, budgets, staffing or other aspects of the nursing home including, but not limited to, those which relate or refer to any of the allegations in this Complaint.

15.    Jurisdiction and venue are proper in this Court.

## FACTUAL BACKGROUND AND ALLEGATIONS COMMON TO ALL COUNTS

16.    Plaintiff contends that all the Defendants jointly and severally participated in the actions, policy making, management, control, and the operation and development of the facility, and they exercised the control over all matters which form a basis of the causes of action set forth in this Complaint. All of the Defendants jointly operated the facility as described herein.

17.    The wrongs complained of herein were of a continuing nature, and occurred throughout Zelma Wells' stay at Defendants' facility.

18.    Defendants were aware of the systemic problems at Golden LivingCenter - Harrison throughout the residency of Zelma Wells via state surveys and internal documents prepared by Defendants, their agents, and employees, which were available at all levels of Defendants' corporate structure. These failures had a direct impact on the care provided to the residents, including Zelma Wells.

19. On all of the occasions complained of herein, Zelma Wells was under the care, supervision, and treatment of the agents and/or employees of Defendants, and the injuries complained of herein were proximately caused by the acts and omissions of Defendants named herein.

20. Defendants had vicarious liability for the acts and omissions of all persons or entities under their control, either directly or indirectly, including their employees, agents, consultants, and independent contractors, whether in-house or outside entities, individuals, agencies, or pools causing or contributing to the injuries of Zelma Wells.

21. Defendants are directly liable for the acts and/or omissions contained herein due to the direct control, ownership, and/or management of the operations of Golden LivingCenter - Harrison. This exertion of control, ownership, and/or management by the Defendants created a dangerous environment for all residents, including Zelma Wells.

22. Defendants were aware of the dangerous environment that was created by their methods of management and/or control at Golden LivingCenter - Harrison and the harm caused to the residents, including Zelma Wells.

23. Defendants have joint and several liability for the actions complained of herein because they consciously and deliberately pursued a common plan or design to commit the tortuous acts described in this Complaint, and these Defendants actively took part in such actions.

24. In approximately 2007, Zelma Wells was admitted to Golden LivingCenter - Harrison, where she remained a resident until July 20, 2008.

25.    At the time of her admission Zelma Wells was no longer competent to handle her own affairs, and her cognitive and physical skills were impaired. As such, she required around the clock nursing home care. She no longer had the conscious awareness necessary to be able to fully comprehend all of the elements necessary to know that she had been the victim of nursing home negligence and resident rights violations and this condition continued until the end of her residency. As such any applicable statute of limitation was tolled due to her disabilities.

26.    From the time of her admission to Golden LivingCenter - Harrison, Defendants began a continuous and substantially uninterrupted course of caring for and treating Zelma Wells. The negligence of the Defendants consisted of a series of negligent acts and a continuing course of improper treatment. As such, the statute of limitations did not commence running until treatment by Defendants ended.

27.    Defendants were aware of Zelma Wells's medical condition and the care she required when they represented that they could adequately care for her needs.

28.    In an effort to ensure that Zelma Wells and other residents whose care was partially funded by the government were placed at Golden LivingCenter - Harrison, Defendants held themselves out to the Arkansas Department of Human Services (DHS) and the public at large as being:

a.    Skilled in the performance of nursing, rehabilitative and other medical support services;

b.    Properly staffed, supervised, and equipped to meet the total needs of their nursing home residents;

c.    Able to specifically meet the total nursing home, medical, and physical therapy needs of Zelma Wells and other residents like her; and

    **d.**    Licensed by DHS and complying on a continual basis with all rules, regulations and standards established for nursing homes.

    29.    Defendants failed to discharge their obligations of care to Zelma Wells with a conscious disregard for her rights and safety. At all times mentioned herein, Defendants, through their corporate officers and administrators, had knowledge of, ratified and/or otherwise authorized all of the acts and omissions that caused the injuries suffered by Zelma Wells, as more fully set forth herein. Defendants knew that this facility could not provide the minimum standard of care to the weak and vulnerable residents of Golden LivingCenter - Harrison. The severity of the recurrent negligence inflicted upon Zelma Wells while under the care of the facility accelerated the deterioration of her health and physical condition and resulted in the physical and emotional injuries described below:

    a.    Dehydration;

    b.    Fractured leg from being dropped by staff;

    c.    Urinary tract infections;

    d.    Sepsis

    e.    Poor hygiene;

    f.    Pain and suffering;

    g.    Mental anguish; and

    h.    Death

All of the above-identified injuries, as well as the conduct specified below, caused Zelma Wells to lose her personal dignity and to suffer extreme and unnecessary pain,

degradation, anguish, otherwise unnecessary hospitalizations, emotional trauma and death.

30.    Defendants controlled the operation, planning, management, and quality control of Golden LivingCenter - Harrison.  The authority exercised over the nursing facility included, but was not limited to, budgeting, marketing, human resources management, training, staffing, creation and implementation of all policy and procedure manuals used by Golden LivingCenter - Harrison, federal and state reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax and accounting control through fiscal policies established by Defendants.

31.    Upon information and belief, Defendants operated and managed Golden LivingCenter - Harrison so as to maximize profits by reducing staffing levels below that needed to provide adequate care to residents that would comply with federal and state regulations governing skilled nursing facilities. Thus, Defendants intentionally and/or with reckless disregard for the consequences of their actions caused staffing levels at their facility to be set so that the personnel on duty at any given time could not reasonably tend to the needs of their assigned residents. Upon information and belief, Defendants knowingly established staffing levels that created recklessly high nurse/resident ratios and disregarded patient acuity levels as well as the minimal time required to perform essential functions. All of these acts of malfeasance directly caused injury to Zelma Wells and other residents of Golden LivingCenter - Harrison and were known to Defendants.

32.    Upon information and belief, the acts and omissions of Defendants were motivated by a desire to increase the profitability of Golden LivingCenter - Harrison by

reducing expenditures for needed staff, training, supervision and care to levels that would predictably lead to severe injury.

## COUNT I

### NEGLIGENCE AS DEFINED BY THE ARKANSAS MEDICAL MALPRACTICE ACT AGAINST ALL DEFENDANTS EXCEPT ADMINISTRATOR BAILEY

33.    As a cause of action and ground for relief, Plaintiff alleges the factual matters described in the preceding paragraphs, inclusive, of the Complaint as a part of this count.

34.    Defendants owed a non-delegable duty to residents, including Zelma Wells, to use reasonable care in treating the residents of Golden LivingCenter – Harrison with the degree of skill and learning ordinarily possessed and used by nursing home facilities in the same or similar locality.

35.    Defendants owed a non-delegable duty to assist all residents, including Zelma Wells, in attaining and maintaining the highest level of physical, mental and psychosocial well-being.

36.    Defendants failed to meet the applicable standards of care and violated their duty of care to Zelma Wells through mistreatment, abuse and neglect. Defendants failed to supervise nurses and aides and failed to hire sufficient nurses and aides. As such, the nurses and aides were unable to provide Zelma Wells the requisite care and, as a result, the following negligent acts occurred as set forth in this paragraph. The medical negligence of Defendants includes, but is not limited to, the following acts and omissions:

a.   The failure to ensure that Zelma Wells attained and maintained her highest level of physical, mental, and psychosocial well-being.

b.   The failure to ensure that Zelma Wells received the following:

   (1)   Timely and accurate care assessments;

   (2)   Proper treatment, medication and diet; and

   (3)   Necessary supervision.

c.   The failure to establish, publish and/or adhere to policies for nursing personnel concerning the care and treatment of residents with nursing, medical and psychosocial needs similar to those of Zelma Wells.

d.   The failure to provide Zelma Wells with adequate and appropriate assessment for fluid management to prevent dehydration;

e.   The failure to provide and maintain an adequate and appropriate fluid maintenance program for Zelma Wells to prevent dehydration;

f.   The failure to provide, implement and ensure adequate nursing care plan revisions and modifications as the needs of Zelma Wells changed.

g.   The failure to provide, implement and ensure an adequate nursing care plan for Zelma Wells was followed by nursing personnel.

h.   The failure to provide care, treatment, and medication in accordance with physician's orders.

i.   The failure to provide proper treatment and assessment to Zelma Wells in order to prevent the injuries set forth herein;

j.   The failure to adequately and appropriately monitor Zelma Wells and recognize significant changes in her health status.

k.   The failure to properly and timely notify the attending physician of Zelma Wells of significant changes in her physical condition, as well as persistent, unresolved problems relating to the care and physical condition of Zelma Wells causing her needless and unnecessary pain, agony and suffering.

37.   A reasonably prudent nursing home, operating under the same or similar conditions, would not have failed to provide the care listed above.   Each of the

foregoing acts of negligence on the part of Defendants was a proximate cause of Zelma Wells' injuries, which were all foreseeable to Defendants.

38.    Defendants were negligent and reckless in breaching the duties owed to Zelma Wells under the Medical Malpractice Act for the reasons specifically enumerated in this Complaint.

39.    As a direct and proximate result of such grossly negligent, willful, wanton, reckless, malicious and/or intentional conduct, Zelma Wells suffered injuries as described herein. Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, loss of enjoyment of life, humiliation, emotional distress, and death in an amount to be determined by the jury and exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT II

### NEGLIGENCE AGAINST ALL DEFENDANTS EXCEPT ADMINISTRATOR BAILEY

40.    As a cause of action and ground for relief, Plaintiff alleges the factual matters described in the preceding paragraphs of the Complaint as a part of this count.

41.    Defendants owed a non-delegable duty to residents, including Zelma Wells, to provide adequate and appropriate custodial care and supervision, which a reasonably careful person would provide under similar circumstances.

42.    Defendants owed a non-delegable duty to residents, including Zelma Wells, to exercise reasonable care in providing care and services in a safe and beneficial manner.

43.    Defendants owed a non-delegable duty to residents, including Zelma Wells, to hire, train and supervise employees to deliver care and services to residents in a safe and beneficial manner.

44.    Defendants breached these duties by failing to exercise reasonable care and by failing to prevent the mistreatment, abuse, and neglect of Zelma Wells. The negligence of Defendants includes, but is not limited to, the following acts and omissions:

a.    The failure to provide a safe environment;

b.    The failure to provide Zelma Wells with adequate and appropriate hygiene care, including the failure to bathe her daily and after each incontinent episode to prevent urine and fecal contact with her skin for extended and medically unsafe periods of time.

c.    The failure to protect Zelma Wells from being dropped and suffering a fractured leg;

d.    The failure to provide Zelma Wells with adequate and appropriate hygiene care, including the failure to bathe her daily and after each incontinent episode to prevent urine and fecal contact with her skin for extended and medically unsafe periods of time.

e.    The failure to provide clean bed linens to Zelma Wells to prevent urine and fecal contact for extended periods of time.

f.    The failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nurse assistants, and medication aides to meet the total needs of Zelma Wells throughout her residency.

g.    The failure to increase the number of nursing personnel at Golden LivingCenter - Harrison to ensure that Zelma Wells:

(1)     Received timely and accurate care assessments;

(2)     Received proper treatment, medication, and diet; and

(3)     Was protected from accidental injuries by the correct use of ordered and reasonable safety measures.

h.    The failure to provide care, treatment and medication in accordance with physician's orders.

i.    The failure to adequately screen, evaluate, and check references, test for competence, and use ordinary care in selecting nursing personnel to work at Golden LivingCenter - Harrison.

j.    The failure to terminate employees at Golden LivingCenter - Harrison assigned to Zelma Wells that were known to be careless, incompetent, and unwilling to comply with the policy and procedures of Golden LivingCenter - Harrison and the rules and regulations promulgated by the Arkansas Department of Health and Services and the Office of Long Term Care.

k.    The failure to assign nursing personnel at Golden LivingCenter - Harrison duties consistent with their education and experience based on:

(1)     Zelma Wells's medical history and condition, nursing, and rehabilitative needs;

(2)     The characteristics of the resident population residing in the area of the facility where Zelma Wells was a resident; and

(3)     The nursing skills needed to provide care to such resident population.

l.    The failure by the members of the governing body of Golden LivingCenter - Harrison to discharge their legal and lawful obligation by ensuring that the rules and regulations designed to protect the health and safety of residents, such as Zelma Wells, as promulgated by the Arkansas Department of Health and Human Services and the Arkansas Office of Long Term Care, were consistently complied with on an ongoing basis, and ensuring appropriate corrective measures were implemented to correct problems concerning inadequate resident care.

m.    The failure to adopt adequate guidelines, polices, and procedures of Golden LivingCenter - Harrison for documenting, maintaining files,

-15-

investigating, and responding to any complaint regarding the quality of resident care or misconduct by employees at Golden LivingCenter - Harrison, regardless of whether such complaint derived from a resident of the facility, an employee of the facility, or any interested person.

n.   The failure to maintain medical records on Zelma Wells in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible, and systematically organized with respect to diagnosis, treatment and assessment, and establishment of appropriate care plans of care and treatment.

o.   The failure to properly notify the family of Zelma Wells of significant changes in her health status.

45.   A reasonably careful nursing home operating under similar circumstances would foresee that the failure to provide the ordinary care listed above would result in devastating injuries to Zelma Wells.

46.   Defendants further breached their duty of care to Zelma Wells by violating certain laws and regulations in force in the State of Arkansas at the time of the occurrences discussed herein including, but not limited to, the following:

a.   By failing to comply with rules and regulations promulgated by the Arkansas Department of Human Services, Division of Social Services, Office of Long Term Care, pursuant to authority expressly conferred by Act 28 of 1979 (Ark. Code Ann. § 20-10-202, et seq.) and published in the Long Term Care (LTC) Provider Manual on April 8, 1984, and the supplements thereto, and federal minimum standards imposed by the United States Department of Health and Human Services.

b.   By violating the aforementioned regulations cited in subparagraph a) and including, but not limited to:

(1)   By failing to provide the necessary care and services to attain or maintain the highest practicable, physical, mental, and psychosocial well-being of Zelma Wells, in accordance with the comprehensive assessment and plan of care created at Golden LivingCenter - Harrison. 42 C.F.R. § 483.25.

(2)   By failing to ensure a nursing care plan based on Zelma Wells's problems and needs was established that contained measurable

-16-

objectives and timetables to meet her medical, nursing, and mental and psychosocial needs as identified in her comprehensive assessment.  42 C.F.R. § 483.25.

(3)     By failing to review and revise Zelma Wells's nursing care plan when her needs changed. 42 C.F.R. § 483.20.

(4)     By failing to treat Zelma Wells courteously, fairly, and with the fullest measure of dignity. 42 C.F.R. § 483.15(a).

(5)     By failing to provide sufficient nursing staff and nursing personnel to ensure that Zelma Wells attained and maintained her highest practicable physical, mental and psychosocial well-being. 42 C.F.R. § 483.30.

(6)     By failing to notify the family and physician of Zelma Wells of a need to alter her treatment significantly.    42 C.F.R. § 483.10(b)(11).

(7)     By failing to provide a safe environment.  42 C.F.R. § 483.15(h).

(8)     By failing to provide Zelma Wells with sufficient fluid intake to maintain proper hydration and health throughout her residency. 42 C.F.R. § 483.25(j); and

(9)     By failing to administer Golden LivingCenter - Harrison in a manner that enabled it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident. 42 C.F.R. § 483.75.

c.     By violating Ark. Code Ann. §§ 5-28-101 and 5-28-103 by criminally abusing and neglecting Zelma Wells and by failing to report that abuse in violation of Ark. Code Ann. § 5-28-203.

47.    A reasonably prudent nursing home, operating under the same or similar conditions, would not have failed to provide the care listed above.  Each of the foregoing acts of negligence on the part of Defendants was a proximate cause of Zelma Wells' injuries, as more specifically as described herein, which were all foreseeable.

48.    As a direct and proximate result of such grossly negligent, willful, wanton, reckless, malicious and/or intentional conduct, Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Defendants including, but not limited to, medical expenses, pain and suffering, mental anguish, disability, disfigurement, loss of enjoyment of life, humiliation, emotional distress, and death in an amount exceeding that required by federal court jurisdiction in diversity of citizenship cases to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT III

## NEGLIGENCE AGAINST ADMINISTRATOR BAILEY

49.    Plaintiff re-alleges and incorporates all of the allegations as if set forth herein.

50.    Upon information and belief, Separate Defendant Noreen Bailey was the administrators of Golden LivingCenter - Harrison during the residency of Zelma Wells. To the extent the names of the licensed administrators who may have managed this facility during the residency of Zelma Wells are determined, all of the following acts are properly attributed to them and Plaintiff will seek leave to substitute these individuals as proper party Defendants.

51.    As a nursing home administrator, Separate Defendant owed a common law duty to act as reasonably a prudent nursing home administrator and to prevent all reasonably foreseeable injuries to the residents of Golden LivingCenter - Harrison.

52.    As a nursing home administrator, Separate Defendants had a common law duty to remain informed as to events occurring at Golden LivingCenter - Harrison

-18-

through contact with the various departments that they managed, including, but not limited to, nursing, dietary, therapy, housekeeping, social services, and maintenance. Separate Defendant was required under law to be aware of matters occurring at the nursing home and to take affirmative steps to correct problems, particularly when those problems could reasonably cause or contribute to an injury, abuse or neglect to residents of the home.

53.   When Separate Defendant accepted the position of administrator of Golden LivingCenter - Harrison she assumed the duties as set forth in the preceding paragraphs.

54.   It is reasonably foreseeable that injuries, abuse and neglect to residents of Golden LivingCenter - Harrison, including Zelma Wells, would occur as a direct result of Separate Defendant's failures to carry out their duties as administrator of the facility.

55.   As a nursing home administrator, Separate Defendant was centrally involved and actively participated in tortuous conduct that directly caused or contributed to the injuries of Zelma Wells. The following areas describe with specificity the wrong-doings of Separate Defendants that resulted in harm to Zelma Wells:

    a.   Staffing

        (1)   Nursing home residents, including Zelma Wells, often are unable to care for themselves; thus, they rely on nursing home staff to provide many, if not all, of their activities of daily living (ADL's). Nursing facilities have a common law duty, as well as a statutory duty, to have sufficient nursing staff to provide for the needs of their residents.

        (2)   The administrator is responsible and required to hire and maintain sufficient staff to ensure that these residents' needs are met.

Further, the administrator must establish and maintain proper working relationships with physicians, nurse practitioners, and employees of the facility.

(3)   When the administrator, as here, fails to hire and maintain sufficient staff and fails to maintain proper working relationships between the departments of the facility, the residents do not receive adequate and appropriate care.

(4)   Additionally, when the administrator fails to hire and maintain sufficient staff, the staff who are present are unable to meet the total needs of the residents through no fault of their own.

(5)   When the administrator fails to hire and maintain sufficient staff, those who are present must take shortcuts with respect to the care provided and are unable to provide adequate and appropriate care to the residents of the facility.

(6)   Rather than hiring and maintaining sufficient staff Separate Defendants hired too few registered nurses, too few LPNs, and too few certified nurse assistants. More importantly, too many of these staff members skipped work or terminated their employment because they did not have enough co-workers to properly care for the residents who depended upon them, or because of deplorable working conditions, or because the pay set by the nursing home with the input of the administrator was too low, or such other reasons as will be proven at trial of this matter.

(7)   Separate Defendant failed to develop and maintain proper working relationships between physicians, nurse practitioners and employees of the facility, and between the various departments they managed.  Zelma Wells was injured through her failure to manage these individuals and departments in a way that they could fluidly and seamlessly work together.

(8)   Due to staff shortages at Golden LivingCenter - Harrison, Zelma Wells' medical records were not kept and maintained in accordance with accepted professional standards and practices. This incomplete documentation resulted in further injuries to Zelma Wells as the facility was unable to properly understand her condition, changes that occurred in her condition, and whether or not her care plan and dietary assessments were properly modified to address changes in her condition.

(9)     Separate Defendant owed a non-delegable duty to Zelma Wells and other residents of Golden LivingCenter - Harrison, during her tenure as administrator, to ensure adequate and appropriate custodial care and supervision through their control over staffing issues.   A reasonably prudent nursing home administrator would have known or should have known that injuries would occur to residents such as Zelma Wells if staffing levels were not maintained within reasonable parameters.

(10)    With respect to staffing, the failures of Separate Defendant include but are not limited to:

(a)     Ensuring that the staff provided Zelma Wells adequate hygiene and sanitary care;

(b)     Ensuring that the staff provided Zelma Wells clean bed linens to prevent urine and fecal contact for extended periods of time;

(c)     Providing sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nurse assistants, and medication aides (nursing personnel) to meet the total needs of Zelma Wells throughout her residency;

(d)     Ensuring that Zelma Wells:

        i.      Received timely and accurate care assessments;

        ii.     Received prescribed treatment, medication and diet; and

        iii.    Was protected from accidental or intentional injuries by the correct use of ordered and reasonable safety measures and proper supervision of staff and other residents;

(e)     Providing a safe environment free from preventable abuse and neglect;

(f)     Ensuring that Zelma Wells received care, treatment and medication in accordance with physician's orders;

(g)     Ensuring that Zelma Wells was provided with the dignity and respect that all nursing home residents are entitled to receive;

-21-

(11)   Adequately screen, evaluate and check references, test for competence, and use ordinary care in selecting nursing personnel to work at Golden LivingCenter - Harrison;

(12)   Terminating employees at Golden LivingCenter - Harrison assigned to Golden LivingCenter - Harrison that were known (or should have been known) to be careless, incompetent and unwilling to comply with the policy and procedures of the facility and the rules and regulations promulgated and adopted by the Arkansas Office of Long Term Care;

(13)   Assigning nursing personnel at Golden LivingCenter - Harrison consistent with their education and experience and based on:

(a)   Zelma Wells's medical history and condition, nursing and rehabilitative needs;

(b)   The characteristics of the resident population residing in the area of the facility where Zelma Wells was a resident; and

(c)   Nursing skills needed to provide care to such resident population.

b.   Separate Defendant failed to implement adequate guidelines, policies and procedures for:

(1)   Investigating the relevant facts, underlying deficiencies, or licensure violations or penalties found to exist at Golden LivingCenter - Harrison by the Arkansas Office of Long Term Care or any state or federal survey agency;

(2)   Determining the cause of any such deficiencies, violations or penalties; and

(3)   Correcting deficiencies or licensure violations or penalties found to exist at Golden LivingCenter - Harrison.

c.   Adopting adequate guidelines, policies, and procedures for determining whether Golden LivingCenter - Harrison had sufficient numbers of nursing personnel to:

(1)   Provide 24-hour nursing services;

    (2)    Meet the needs of residents who reside at the facility, including Zelma Wells; **and**

    (3)    Meet the total nursing needs of residents, including their activities of daily living.

d.    Separate Defendant failed to adopt adequate guidelines, polices, and procedures of Golden LivingCenter - Harrison for documenting; maintaining files; investigating and responding to any complaint regarding the quality of resident care or misconduct by employees at Golden LivingCenter - Harrison regardless of whether such complaint derived from a state survey agency, a resident of the facility, an employee of the facility or any interested person. This failure resulted in injury, abuse and neglect to residents of the facility, including Zelma Wells.

e.    Separate Defendant failed to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care at Golden LivingCenter - Harrison.

f.    Separate Defendant failed to ensure that Zelma Wells attained and maintained her highest level of physical, mental and psychosocial well-being, and the breach of other of their non-delegable duties regarding staffing directly caused damages to Zelma Wells.

g.    Budgeting or Allocation of Resources

    (1)    As administrator, Separate Defendant was responsible for providing accurate information regarding the monetary needs of the facility to the owners of the nursing home so that a workable budget could be set.

    (2)    As administrator, Separate Defendant was required to administer Golden LivingCenter - Harrison in a manner that enabled it to use resources effectively and efficiently to attain or maintain the highest practicable physical, mental and psychosocial well-being of each resident.

    (3)    As administrator, Separate Defendant was responsible for allocating funds within the budget provided by the owners of the nursing home in a manner that ensured that the needs of the residents, including Zelma Wells, were met.

    (4)    Separate Defendant failed to properly report the budgetary needs of the facility and to properly allocate the funds budgeted to the

facility for the proper care of its residents, resulting in the following:

(a)     Staffing levels that were insufficient to attain or maintain the highest practicable physical, mental and psychosocial well-being of each residents, including Zelma Wells, and

(b)     Shortages of supplies and food necessary to attain or maintain the highest practicable physical, mental and psychosocial well-being of each resident, including Zelma Wells.

(5)     Upon information and belief, Plaintiff alleges that rather than properly allocating the budgeted funds, Separate Defendant inappropriately allocated or allowed funds to be paid to management companies that did not assist or even participate in managing the care provided to the residents. Rather, Separate Defendants only enhanced the profits of the home, allocated funds to employees whose only duties were non-patient oriented and to items and services that were unnecessary to achieve the proper goal of providing adequate and appropriate care to the residents.

(6)     The failure to adequately budget and allocate resources to the facility directly caused damages to Zelma Wells.

h.     Corporate Compliance and Reporting

(1)     As administrator of Golden LivingCenter - Harrison, Separate Defendant was responsible for ensuring that the facility complied with state and federal standards in providing care to the residents of the home. To that end, they were required to file various reports with regulatory entities.

(2)     As .administrator, Separate Defendant was charged with the responsibility of reporting instances of abuse and neglect that occurred at the facility.   Upon information and belief, Plaintiff alleges that their failure to properly and timely do so resulted in additional injuries to residents, including Zelma Wells.

(3)     Upon information and belief, Plaintiff alleges that Separate Defendant failed to properly recognize and report instances of non-compliance occurring at Golden LivingCenter - Harrison, and further failed to correct those instances. These failures to report resulted in the appearance of a facility that was properly managed and maintained. This false and misleading appearance induced the

family of Zelma Wells to place her in the facility and misled them as to the care she would receive at the facility. Further, upon information and belief, Plaintiff alleges that because certain problems were not reported or were under-reported, the facility escaped inspections and investigations by regulatory agencies and even in-house reviews that might have corrected the deficiencies. These deficiencies that the facility experienced created a more dangerous environment in which additional injuries could occur to residents, including Zelma Wells.

(4)     Separate Defendant was responsible for ensuring that no claims for reimbursement were submitted to the federal or state governments for services that were not provided or services provided that failed to meet required standards. Upon information and belief, Separate Defendant submitted false claims as a result of the various staffing issues listed above, resulting in unjust enrichment to the facility and a breach of Zelma Wells's admissions agreement.

(5)     The failure to adequately comply with and report violations of state and federal standards directly caused harm to Zelma Wells.

56.    A reasonably careful nursing home administrator would have foreseen that the failure to provide the ordinary care listed above would result in devastating injuries to Zelma Wells.

57.    As a direct and proximate result of Separate Defendant's failure to perform the responsibilities as set forth above, Zelma Wells suffered the injuries set forth above, and also suffered extreme pain, suffering, mental anguish, embarrassment, disfigurement, fright and death, all of which required hospitalization and medical treatment, and all of which required Zelma Wells to incur significant hospital and medical expenses.

58.    Based on such conduct of Defendant as set out above, Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Defendant including, but not limited to, medical expenses, physical pain, suffering, mental

-25-

anguish, disability, loss of enjoyment of life, humiliation, emotional distress, and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT IV

### VIOLATIONS OF THE ARKANSAS LONG TERM CARE RESIDENT'S RIGHTS STATUTE PURSUANT TO ARK. CODE ANN. § 20-10-1201, et seq. AGAINST DEFENDANT GGNSC HARRISON, LLC d/b/a GOLDEN LIVINGCENTER - HARRISON

59.     As a cause of action and ground for relief, Plaintiff alleges the factual matters described in the preceding paragraphs, inclusive, of the Complaint as a part of this count.

60.     Defendant Golden LivingCenter - Harrison had a statutorily mandated responsibility to provide Zelma Wells her nursing home resident's rights as set forth in Ark. Code Ann. § 20-10-1201, et seq.

61.     Defendant's responsibilities to Zelma Wells, as outlined in Ark. Code Ann. § 20-10-1201, *et seq.*, are non-delegable in that Defendant is directly liable for deprivations and infringements by any person or entity under its direct and indirect control, including its employees, agents, consultants, and independent contractors, whether in-house or outside entities, individuals, agencies, or pools, or caused by Defendant's policies, whether written or unwritten, or common practices.

62.     The duties alleged in the immediately preceding paragraph include, but are not limited to, proper training and supervision, proper hiring, background and referral checks and proper retraining and dismissing of employees, agents, consultants and independent contractors.

63.   Notwithstanding the responsibility of Defendant to provide her with these statutorily mandated nursing home resident's rights, Zelma Wells was deprived of such rights by Defendant's failure to provide adequate and appropriate health care and protective and support services, including therapeutic and rehabilitative services consistent with her resident care plan. These failures include, but are not limited to, the following:

a.   Failing to provide adequate and appropriate healthcare, protective and support services, thus leading to the injuries set forth herein and persistent, unresolved problems relating to the care and physical condition of Zelma Wells, causing her needless and unnecessary pain, agony and suffering;

b.   Failing to provide adequate and appropriate therapeutic and rehabilitative services;

c.   Failing to provide adequate and appropriate supervision and protection to Zelma Wells;

d.   Failing to develop, implement, and update an adequate appropriate resident care plan to meet the needs of Zelma Wells;

e.   Failing to maintain accurate medical and/or clinical records that contain sufficient information to justify the diagnosis and treatment and to accurately document the results, including, at a minimum, documented evidence of assessments and the needs of Zelma Wells, of an establishment of appropriate plans of care and treatment, and of the care and services provided;

f.   Failing to appropriately monitor Zelma Wells and recognize significant signs and symptoms of change in her health condition;

g.   Failing to properly notify the attending physician of Zelma Wells of significant changes in her physical condition;

h.   Failing to properly notify the family of Zelma Wells of significant changes in her health status;

i.   Failing to properly supervise staff;

-27-

j.    Failing to properly train staff; and

k.    Failing to treat Zelma Wells courteously, fairly, and with the fullest measure of dignity.

64.    As a result of the aforementioned violations, Plaintiff, pursuant to Ark. Code Ann. § 20-10-1209(a)(4), is entitled to recover actual damages in an amount exceeding that required for federal court jurisdiction in diversity of citizenship cases, because the aforementioned violations are the result of Defendant failing to do that which a reasonably careful person would do under circumstances similar to those shown by the evidence in this case, which caused the injuries of Zelma Wells, as more specifically described in this Complaint.

65.    The aforementioned violations of the Arkansas Resident's Rights Statute by Defendant were willful, wanton, gross, flagrant, reckless, and conducted with conscious indifference to the rights of Zelma Wells, and, pursuant to Ark. Code Ann. § 20-10-1209(c), Plaintiff is entitled to punitive damages.

## COUNT V

## CIVIL LIABILITY FOR CONDUCT CONSTITUTING FELONY NEGLECT OF AN ENDANGERED OR IMPAIRED ADULT AGAINST ALL DEFENDANTS

66.     As a cause of action and ground for relief, Plaintiff alleges the factual matters described in the preceding paragraphs, inclusive, of the Complaint as a part of this count.

67.     Zelma Wells was an endangered or impaired adult as defined by Ark. Code Ann. § 5-28-101(8)(B).

68.     Defendants were caregivers for Zelma Wells, as defined by Ark. Code Ann. § 5-28-101(3).

69.     As set forth herein, Defendants negligently failed to provide necessary treatment, rehabilitation, care, food, clothing, shelter, supervision, and medical services to Zelma Wells.

70.     As set forth herein, Defendants committed acts or omissions constituting felony conduct in negligently failing to report health problems or changes in health problems or changes in the health conditions of Zelma Wells to the appropriate medical personnel.

71.     Defendants negligently failed to carry out the lawfully required care plan or prescribed treatment plan for Zelma Wells.

72.     Defendants failed to provide goods and services necessary to avoid physical harm, mental anguish, or mental illness as defined in regulations promulgated by the Office of Long Term Care of the Division of Medical Services of the Department of Human Services to an adult resident of a long-term care facility.

73.    At the time of the alleged occurrences, there was in force a penal statute, Ark.Code Ann. § 5-28-103(c)(1), by which the conduct set out herein constituted felony neglect of an endangered or impaired adult by causing serious physical injury.

74.    Pursuant to Ark. Code Ann. § 16-118-107, any person injured or damaged by reason of conduct of another person that would constitute a felony under Arkansas law may file a civil action to recover damages based on the conduct.

75.    The remedy provided by Ark. Code Ann. § 16-118-107 is in addition to any other remedies in law or equity.

76.    The felonious conduct as set forth herein caused the serious injuries to Zalma Wells as described above.

77.    Aside from the compensatory damages prayed for in this Complaint, Plaintiff is entitled to recover costs and attorney's fees pursuant to Ark. Code Ann. § 16-118-107.

### COUNT VI

### PREMISES LIABILITY AGAINST ALL DEFENDANTS EXCEPT ADMINISTRATOR BAILEY

78.    As a cause of action and ground for relief, Plaintiffs allege the factual matters described in the preceding paragraphs, inclusive, of the Complaint as a part of this count.

79.    Defendants, during the time they owned, operated, managed, and/or controlled Golden LivingCenter - Harrison, had a duty to warn patrons/residents, including Plaintiff, of dangerous conditions that Defendants knew existed, or reasonably should have known existed in the exercise of reasonable care, and

particularly dangerous conditions that were willfully, wantonly, and/or intentionally created by Defendants, including, but not limited to, the failure to adequately staff the facility, adequately train the staff, provide adequate support for the staff, adequately budget, fund, or spend sufficient sums to provide adequate and appropriate healthcare to the residents which posed a foreseeable threat to the residents of Golden LivingCenter - Harrison.

80.    Defendants were negligent in failing to warn residents, including Zelma Wells, of known insufficient staffing problems occurring while Defendants owned, operated, managed, and/or controlled Golden LivingCenter - Harrison.

81.    Defendants owed a duty to exercise reasonable care to correct dangerous conditions, including, but not limited to, the failure to adequately staff the facility, adequately train the staff, provide adequate support for the staff, adequately budget, fund, or spend sufficient sums to provide adequate and appropriate healthcare, for the safety of their residents, including  Zelma Wells.

82.    Defendants owed a duty to the residents, including Zelma Wells, to provide safe living conditions.

83.    Defendants having years of experience owning, operating, and/or managing nursing homes and have set in place numerous systems to provide information on occurrences, conditions, and events involving residents in Golden LivingCenter - Harrison, which provided Defendants with the notice and knowledge of the conditions alleged by Zelma Wells, or reasonably should have placed Defendants on notice of said conditions.

84.    Defendants were negligent in the following acts and/or omissions:

a. The failure to provide even the minimum number of staff necessary to assist the residents with their needs;

b. The failure to protect Zelma Wells from harm within the facility;

c. The failure to maintain appropriate records, including obvious failure to monitor and document significant changes in Zelma Wells's condition;

d. The failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nurse assistants, and medication aides (hereinafter "nursing personnel") to meet the total needs of Zelma Wells;

e. The failure to provide a nursing staff that was properly staffed, qualified, and trained;

f. The failure to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care;

g. The failure to ensure sufficient and appropriate supplies were available to meet the needs of the residents, including Zelma Wells;

h. The failure to ensure that the facility was properly budgeted to ensure that residents' needs were met.

85. Defendants willfully and wantonly created these dangerous conditions by their methodology of management and/or control.

86. Not only did Defendants create these dangerous conditions that put Zelma Wells and other residents at risk but they attempted to keep this information secreted from the public and their residents, including, but not limited to, Zelma Wells, by means of an intentional cover-up and fraudulent documentation.

87. Defendants failed to warn the residents, including Zelma Wells, of these dangerous conditions created by Defendants at Golden LivingCenter - Harrison.

88. As a direct and proximate result of the negligence of Defendants as set out above, Zelma Wells suffered the injuries set forth herein, all of which required

hospitalization and medical treatment, and required Zelma Wells to incur significant hospital and medical expenses.

89.   Based on the conduct of Defendants as set forth above, Plaintiff asserts a claim for judgment for all compensatory damages and punitive damages against Defendants including, but not limited to, medical expenses, physical pain, suffering, mental anguish, disability, loss of enjoyment of life, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT VII

## RES IPSA LOQUITUR AGAINST ALL DEFENDANTS

90.   As a cause of action and ground for relief, Plaintiff alleges the factual matters described in the preceding paragraphs, inclusive, of the Complaint as a part of this count.

91.   Plaintiff asserts a claim for res ipsa loquitur, under the circumstances, because of the fact that Zelma Wells was in the exclusive control of the Defendants, and the injuries of Zelma Wells were attributable to the environment in which she was at the time of the occurrences, which were under the exclusive control of the Defendants, and had been under the exclusive control of the Defendants without any opportunity for the environment of Zelma Wells to have been changed after leaving the possession and control of the Defendants.

92.   That, in the normal course of events, no injury would have occurred if Defendants had used ordinary care while Zelma Wells was in the exclusive control of the Defendants.

-33-

93.    That the Defendants, in their control of Zelma Wells, and in the environment in which she was situated, owed Zelma Wells a duty to use ordinary care for the safety and health and the condition of Zelma Wells.

## COUNT VIII

## BREACH OF INFORMED CONSENT AGAINST ALL DEFENDANTS EXCEPT ADMINISTRATORS WALLACE, WALKER AND PALCULICT

94.    As a cause of action and ground for relief, Plaintiff alleges the factual matters described in the preceding paragraphs, inclusive, of the Complaint as a part of this count.

95.    Pursuant to the authority found in Aronson v. Harriman, 321 Ark. 359, 901 S.W.2d 382 (1995), Plaintiff alleges that Defendants are liable based on their breach of duty to give appropriate advice and to obtain informed consent from Plaintiff and Zelma Wells, under the circumstances, and, therefore, Plaintiff asserts that Defendants breached their duty to provide appropriate advice and to obtain informed consent from the decedent under the circumstances.

## COUNT IX

## BREACH OF FIDUCIARY DUTY AGAINST ALL DEFENDANTS

96.    As a cause of action and ground for relief, Plaintiff alleges the factual matters described in the preceding paragraphs, inclusive, of the Complaint as a part of this count.

97.    As a resident of Defendants' facility, Zelma Wells was particularly dependent for her daily care and well-being upon Defendants, their employees and agents. Because of the nature of this dependency and the representations of

Defendants that they could and would provide necessary care, Zelma Wells and her family held in Defendants a special confidence and trust which Defendants accepted by admitting Zelma Wells to their facility and by determining the level of care to be provided to Zelma Wells.

98.   Zelma Wells and her family relied upon the supposed superior knowledge, skill, and abilities of Defendants, that Defendants held themselves out to have. Zelma Wells and her family also relied on Defendants to provide care for Zelma Wells, who, because of her age and infirmities, was not able to care for herself.

99.   By virtue of the nature of the services rendered to Zelma Wells by Defendants, and the special relationship which developed between Defendants and Zelma Wells, as well as the huge disparity of power and unequal bargaining position existing between Defendants and Zelma Wells, Defendants occupied a position of confidence toward Zelma Wells which required fidelity, loyalty, good faith, and fair dealing by Defendants.

100.  Defendants breached their fiduciary duty and duty of good faith and fair dealing to Zelma Wells by failing to provide the appropriate level of care and services to which Zelma Wells was entitled and accepting payment for services and care not provided to Zelma Wells, and by their concealment of and failure to disclose Defendants' abuse and neglect of Zelma Wells.

101.  As a proximate cause of the foregoing breaches of duty by Defendants, Zelma Wells suffered injuries as set forth above.

102.  Based on the conduct of Defendants as set out above, Plaintiff asserts a claim for judgment for all compensatory damages and punitive damages against

Defendants including, but not limited to, medical expenses, physical pain, suffering, mental anguish, disability, loss of enjoyment of life, humiliation, and disfigurement in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law. Plaintiff also seeks the imposition of a constructive trust on all wrongful profits and proceeds arising out of Defendants' breach of fiduciary duty to Zelma Wells.

## COUNT X

## BREACH OF CONTRACT AGAINST ALL DEFENDANTS

103. As a cause of action and ground for relief, Plaintiff alleges the factual matters described in the preceding paragraphs, inclusive, of the Complaint as a part of this count.

104. Plaintiff seeks contractual damages for breach of contract, including restitution of all sums paid by each class member or paid on their behalf, compensation for all consequential damages reasonably foreseeable from Defendants' breach of the agreements, and punitive damages.

105. Upon becoming a resident at Golden LivingCenter - Harrison, Zelma Wells entered into an express or implied contract whereby, for consideration duly paid by her, or on her behalf, Defendants were to provide her with all services during her residency, including, but not limited to, dietary, nursing, housekeeping, laundry, and social activities. Pursuant to such contract, Zelma Wells was entrusted to the Defendants' sole custody and care.

106. As a proximate consequence of the aforementioned acts, omissions and failures, Defendants breached the terms of the agreement, and Plaintiff suffered damages as set forth herein.

107. Plaintiff is entitled to attorneys' fees as provided by Ark. Code Ann. §16-22-308.

108. As a direct and proximate result of Defendants' breach of contract, Plaintiff asserts a claim for judgment for all compensatory damages including the amount a jury determines is sufficient compensation to provide them Plaintiff the benefit of the bargain promised by Defendants plus attorneys' fees, costs, and all other relief to which Plaintiff is entitled by law.

## COUNT X

## VIOLATIONS OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT AGAINST ALL DEFENDANTS

109. As a cause of action and ground for relief, Plaintiff alleges the factual matters described in the preceding paragraphs, inclusive, of the Complaint as a part of this count.

110. Defendants failed to inform Zelma Wells and her family about staffing problems, survey deficiency history, and history of other instances of poor or inadequate resident care at the time of her admission to Golden LivingCenter - Harrison. In particular, Defendants specifically failed to inform Zelma Wells and her family that Golden LivingCenter - Harrison was regularly short of staff such that the needs of the residents could not be met as required by applicable state and federal regulations. Thus, in connection with the sale or advertisement of their services,

Defendants concealed, suppressed, or omitted material facts with the intent that others rely upon that concealment, suppression, or omission in violation of Ark. Code Ann. § 4-88-108.

111.  Defendants knowingly made false representations as to the benefits and characteristics of their services, advertised their goods with the intent not to sell them as advertised, knowingly took advantage of consumers that were unable to protect their interests because of physical infirmities, and engaged in other unconscionable, false, and deceptive acts or practices, all in violation of Ark. Code Ann. § 4-88-107.

112.  At the time of Defendants' violations of the Arkansas Deceptive Trade Practices Act, Zelma Wells was both an elder person and a disabled person as defined by Ark. Code Ann. § 4-88-201.

113. Zelma Wells suffered numerous actual damages and injuries as summarized throughout this Complaint as a result of Defendants' violations of the Arkansas Deceptive Trade Practices Act enumerated above.

114.  Plaintiff seeks all actual damages for all injuries caused by Defendants' violations of the Arkansas Deceptive Trade Practices Act, as provided by Ark. Code Ann. § 4-88-113(f). Further, Plaintiff seeks punitive damages as provided by Ark. Code Ann. § 4-88-204, as well as all reasonable attorney's fees incurred in the prosecution of this action as provided by Ark. Code Ann. §§ 4-88-113(f) and 4-88-204.

## COUNT XI
## WRONGFUL DEATH

115. As a cause of action and ground for relief, Plaintiff alleges the factual matters described in the preceding paragraphs, inclusive, of the Complaint as a part of this count.

116. As a direct and proximate result of the previously alleged conduct, all of which were willful and wanton, outrageous, reckless, malicious and/or intentional, the Defendants caused the death of Zelma Wells.

117. Zelma Wells suffered personal injuries, including, but not limited to, excruciating pain and suffering, mental anguish, emotional distress, and humiliation, all of which caused the family of Zelma Wells to suffer more than the normal grief upon losing their loved one under the circumstances.

118. Plaintiff prays for compensatory damages against the Defendants for the wrongful death of Zelma Wells, including, but not limited to, the grief suffered, as well as the expense of the funeral and other related costs.

119. As a direct and proximate result of the willful, wanton, reckless, malicious and/or intentional conduct, Plaintiff asserts a claim for judgment for all compensatory damages and punitive damages against the Defendants, including, but not limited to, medical expenses, pain and suffering, mental anguish, disability, humiliation, loss of enjoyment of life, the loss of life, and severe emotional distress, as well as funeral expenses and related costs against the Defendants in an amount to be determined by the jury, exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which the Plaintiffs may be entitled, including, but not limited to, claims on behalf of the wrongful death beneficiaries of the decedent, and for any and all other damages that the Plaintiff and beneficiaries are

entitled to recover pursuant to the provisions of AMI 2216. Plaintiff sues for, pursuant to the Wrongful Death Statute, pecuniary injuries sustained by the beneficiaries under the Wrongful Death Statute, together with mental anguish on behalf of the beneficiaries of the decedent under the Wrongful Death Statute.

## COUNT XII
## SURVIVAL

120. As a cause of action and ground for relief, Plaintiff alleges the factual matters described in the preceding paragraphs, inclusive, of the Complaint as a part of this count.

121. Certain of the acts described herein occurred during the lifetime of Zelma Wells, prior to her death, and, therefore, Plaintiff asserts a cause of action and claim on behalf of the estate, and on behalf of the heirs at law of the estate, for the survival claims that arose by reason of the misconduct of the Defendants during the lifetime of Zelma Wells, prior to her death. Therefore, this is a separate and distinct claim from the Wrongful Death Statute, which is described herein in other parts of the Complaint, for these are the causes of action and damages that accrued and were available to Zelma Wells, at the time of her death, and passed to the Plaintiff, pursuant to the Survival Statutes of the State of Arkansas.

## CONSTITUTIONAL OBJECTIONS TO THE
## APPLICABILITY OF ACT 649 OF 2003

122. In the 2003 Session of the Arkansas General Assembly, the legislature passed an act entitled The Civil Justice Reform Act of 2003 ("the Act"), which was signed by the Governor and became effective on or about March 27, 2003, and is codified presently at Ark. Code Ann. 1655-201, *et seq.*

123.  The Act obviously violates Article 5, § 32 of the Arkansas State Constitution, which plainly prohibits legislative limitations on recoveries, and Article 4, §§ 1 and 2 of that Constitution, which prohibit legislative incursions on judicial power. Additionally, the Act violates the constitutional scheme that formally worked to limit governmental incursion on common law rights and limited legislative power to assist special interests. This scheme is embodied in provisions in article 2, §§ 4, 13, and 21, recognizing the right to petition the government for redress; article 2, § 13, guaranteeing the right of every injured person to a remedy; article 2, § 7, prescribing a right to a jury trial which "shall remain inviolate"; article 2, §§ 13 and 21, mandating due process and application of the law of the land; article 2, §§ 3, 18, and 21, recognizing that all citizens shall receive equal treatment; and the related article 5, § 25, limiting unequal treatment to times when it is justified, requiring "that where a general law can be made applicable, no special law shall be enacted."

124.  Act 649 of 2003 provides various onerous and burdensome provisions, which include, but are not limited to, limitations on the amount of punitive damages, provisions creating "phantom defendants," the abrogation of traditional rights to plead joint and several liability, and joint and several liability, to name a few. It is the position of the Plaintiff that the Act is unconstitutional, and the fact that Plaintiff has attempted to comply with some of its provisions in order to not delay the proceedings herein are not to be construed as a wavier thereof.

125.  In the event that it is alleged that Plaintiff has not complied with any provision of Act 649, Plaintiff prays for a declaratory judgment that the Act is itself unconstitutional, in whole or in applicable parts.

## PRAYER FOR RELIEF

126.  Plaintiff asks for damages requested herein, in the various causes of action asserted herein, together with the damages, recited previously, pursuant to the provisions of Ark. R. Civ. P. 10(c).

127.  Plaintiff is suing for the following elements of damage, and asks for damages because of the injuries sustained by Zelma Wells entitled to be recovered in this personal injury claim, as well as for the mental anguish experienced and suffered by Zelma Wells and other pecuniary injuries and damages.

128.  Plaintiff makes a demand against the Defendants, jointly and severally, for a sum in excess of the minimum jurisdictional requirements for federal court, together with costs and all other relief to which the Plaintiff may be entitled, including attorneys' fees for the breach of contract under the causes of action asserted herein, together with a judgment for compensatory and punitive damages, in an amount to be determined by the jury, but, in any event, compensatory and punitive damages, that are in excess of the amount required for federal court jurisdiction, together with the costs and all other expenses of the prosecution of this action, and for all other appropriate relief under the circumstances.

## JURY DEMAND

129.  Plaintiff, pursuant to Rule 38 of the Arkansas Rules of Civil Procedure, demands a jury trial on all factual issues.

> Deanna Trueblood, as Special Administrator of the Estate of Zelma Wells, and on Behalf of the Wrongful Death Beneficiaries of Zelma Wells, Plaintiff

By:_____

DAVID A. HODGES
Attorney at Law
212 Center Street, Fifth Floor
Little Rock, AR 72201-2429
Arkansas Bar No. 65021
Telephone:   501-374-2400
Facsimile:   501-374-8926
E-Mail: david@hodgeslaw.com

and

GENE LUDWIG
Ludwig Law Firm
8501 Pinnacle Valley Road
Little Rock, Arkansas 72223
Arkansas Bar No. 82096
Telephone: (501) 868-7500
Facsimile: (501) 868-7501

UNITED STATES POSTAGE
$07.340
MAY 07 2010
MAILED FROM ZIP CODE 72201

02 1R
000209563S

7008 1830 0001 1370 8146

# FIRST CLASS MAIL

**David A. Hodges**
Attorney at Law
Center Plaza
212 Center Street - Fifth Floor
Little Rock, Arkansas 72201-2429

Corporation Service Company
2711 Centerville Road, Ste 400
Wilmington, Delware 19808